IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

TERRY BUSSEY,

       Plaintiff,

v.                                                                   No. Civ. 16-906 JCH/LF

JAMES MATTIS, Secretary of
U.S. DEPARTMENT OF DEFENSE,

       Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Terry Bussey's appeal (ECF No. 49) of the final decision of the Merit System Protection Board ("MSPB"), which became final on July 11, 2016. Administrative Judge David Brooks ("AJ Brooks" or "MSPB AJ") affirmed the decision to remove Mr. Bussey from his position working for the Defense Threat Reduction Agency ("DTRA") at the Department of Defense ("DOD"). The MSPB AJ's decision constitutes the final action for purposes of review of a decision of the MSPB. Plaintiff timely filed the present lawsuit on August 9, 2016. This Court previously granted summary judgment in favor of Defendant on Plaintiff's discrimination and retaliation claims under Title VII and ordered Defendant to file the administrative record ("AR") of proceedings before the MSPB consistent with Rules 16 and 17 of the Federal Rules of Appellate Procedure. *See* Mem. Op. and Order 32-33, ECF No. 37. The Court, having carefully reviewed the administrative record, the parties' arguments in their briefs, and the relevant law, affirms the decision of the MSPB.

    **I.     FACTUAL BACKGROUND**

Plaintiff Terry Bussey had a lengthy career in the military and in federal service. *See* AR

462, 745, 1042-43. Mr. Bussey began working for the DTRA in 1999, where he was last employed as a Logistic Management Specialist GS-11. AR 461, 1044. He had no history of disciplinary actions taken against him during his federal employment prior to 2015. *See* AR 461.

Paul Collins began working for DTRA in February 2012 as a division chief of facilities and logistics. AR 758. Mr. Collins officially became Mr. Bussey's supervisor approximately 2012-2013 after the agency underwent a reorganization, and he remained so during all times when disciplinary acts were taken against Mr. Bussey. *See* AR 461, 759-60, 1060.

On January 21, 2015, Mr. Collins issued Mr. Bussey a Letter of Reprimand for failure to follow instructions, specifically for failing to submit mileage reports, as per a host tenant agreement and as tasked by Mr. Collins, and for failing to conduct an inventory of vehicles as required by DOD and tasked by Mr. Collins. *See* AR 163-65. Mr. Bussey filed a complaint with the Defense Criminal Investigative Service ("DCIS"), an arm of the DOD Inspector General ("IG") on August 15, 2015. *See* AR 550, 740.

On August 31, 2015, Mr. Collins gave Mr. Bussey Notice of Proposed 5 Day Suspension for conduct unbecoming a federal employee and failure to follow instructions arising from incidents on June 11 and August 12, 2015. *See* AR 116-17, 716. Regarding the June 11, 2015 incident, outside contractors were to conduct an energy and safety inspection of the main compound building, and Mr. Bussey's duties included escorting them around the main compound. *See* AR 116, 760-62, 1075. Despite receiving an advance request for inspectors to take photographs of appropriate equipment, a security guard interrupted the inspection to inquire if the inspectors had authority to take photographs. *See* AR 719, 761-64, 1077-78. Mr. Collins alleged that during the inspection and in front of the contractors, Mr. Bussey yelled at and berated the security guard, yelling that he [Mr. Bussey] was in charge and if he says they can have cameras here, they can

have cameras here. *See* AR 116. Mr. Collins asserted in the notice of proposed suspension that he walked up to Mr. Bussey and told him to stand down, to which Mr. Bussey responded by saying to the effect, "fine I am done," and then Mr. Bussey walked away. *Id.* Mr. Collins asserted he followed him and told him he acted unprofessionally, to which Mr. Bussey responded that he would no longer be building manager. *Id.* Mr. Collins alleged that when he said Mr. Bussey needed to continue doing his job and finish his work escorting the inspection team, Mr. Bussey replied that he did not have a fucking job, turned and walked away. *Id.*

With respect to the August 12, 2015 incident, Mr. Collins alleged that another employee asked Mr. Bussey to change a light bulb, but Mr. Bussey responded that he needed to speak with one of the facilities employees and that it was not his job. *See* AR 117. Mr. Collins stated that he told Mr. Bussey it was his job as the building manager and asked him to change the light bulb. *See id.* Mr. Bussey replied that it was not his job, and when Mr. Collins turned back to further discuss the issue, Mr. Bussey cut him off with a raised hand and said in a loud, confrontational voice, "Sir, with all due respect, I am having a conversation with [this other employee] and you don't need to be involved." *Id.* Mr. Collins again directed him to change the light bulb, but Mr. Bussey did not do so, and another facilities employee had to change the light bulbs. *Id.*

Mr. Bussey submitted a response on September 17, 2015, explaining his version of the June 11 and August 12, 2015 events. *See* AR 170-72. He disputed that he raised his voice and was unprofessional during the June 11th incident. *See* AR 170-72. Regarding the light bulb incident, Mr. Bussey asserted he believed it was a prank. *See* AR 171. He did not address whether he cut off Mr. Collins and told him he did not need to be involved. *See* AR 170-72. Mr. Collins rescinded the proposed suspension on September 24, 2015, giving as his reason that during the notice period Mr. Bussey was "involved in additional misconduct." AR 114.

3

The same day, Mr. Collins issued a Notice of Proposed 14 Calendar Days Suspension for conduct unbecoming a federal employee, failure to comply with leave procedures, lack of candor, and absence without leave. AR 107. In addition to the June 11 and August 12, 2015 incidents, three new September incidents were included. *See* AR 107-12. According to the notice, the first occurred on September 9, 2015, in which Mr. Collins inquired of Mr. Bussey where he had been at 7:00 a.m. when Mr. Collins did not see him in his office. *See* AR 108. Mr. Collins alleged that Mr. Bussey responded, "I don't need to tell you," and when Mr. Collins replied that he did, Mr. Bussey refused to do so. *Id.* After Mr. Collins asked by email where he had been, Mr. Bussey responded five days later that he had been in the bathroom and left to go to Kirtland AFB maintenance. AR 108-09. Mr. Collins asserted that he reviewed badge entry logs that revealed Mr. Bussey had entered the compound for the first time at 8:29 a.m., so he rejected Mr. Bussey's timecard showing his presence from 0630 to 1700 hours and charged him as AWOL from 0630-0830 hours. AR 109.

The 14-day proposed suspension was also based on Mr. Bussey's failure to report to work on September 10, 2015 or request leave. *Id.* Mr. Bussey subsequently submitted a timecard for sick leave, but Mr. Collins rejected it and charged him as AWOL, asserting that submitting a leave form after the fact was not in accordance with proper procedures, as sent to employees on July 20, 2015, that require an employee to telephone his employer to request leave within two hours after the employee is scheduled to report for duty. *See* AR 108-09.

The third new incident began on September 16, 2015, when Mr. Collins alleged he did not see Mr. Bussey in his office at 7 am, and the next day, when he asked Mr. Bussey where he was the prior morning, Mr. Bussey replied in his office. AR 109. Mr. Collins asserted in the notice that he reviewed the badge entry logs and found that on September 16, 2015, Mr. Bussey did not arrive

4

until 7:16 a.m., despite having submitted a timecard showing he was present at work from 0630 to 1700 hours. AR 109. Mr. Collins charged him as AWOL from 0630 to 0715 hours. *Id.*

Mr. Bussey submitted a response to the proposed 14-day suspension on October 16, 2015, in which he supplied additional facts and arguments in response to the June 11 and August 12, 2015 incidents and responded to the new allegations of violating leave procedures and being AWOL. *See* AR 173-76. On November 9, 2015, Mr. Collins rescinded the proposed 14-day suspension, stating "during the notice period [Mr. Bussey was] involved in additional misconduct." AR 94.

Mr. Collins issued on November 9, 2015, a Notice of Proposed Removal for conduct unbecoming a federal employee, abusive language towards co-workers, failure to comply with leave procedures, lack of candor, and absence without leave. AR 87. The Notice included the five incidents described in the proposed 14-day suspension, and Mr. Collins added two new incidents occurring on October 5 and October 21, 2015. *See* AR 87-93. Mr. Collins asserted in the Notice that another employee called Mr. Bussey on October 5, 2015 for assistance in completing a memorandum of understanding, and during the call Mr. Bussey treated him rudely, hung up on him, and caused the employee's project to be delayed. AR 90. Finally, Mr. Collins alleged that on October 21, 2015, Mr. Bussey approached the drivers of a van parked outside the DTRA main building that was filled with outside contractors and asked essentially, "What the fuck are you doing?" *Id.* The drivers reported that Mr. Bussey continued to use profanity in front of the contractors, and when advised by a driver to refrain from using profanity in front of the contractor personnel, Mr. Bussey responded, "I'm going to kick your motherfucking ass" or words to that effect, and asked another driver "what the fuck is his problem?" *Id.*

Mr. Bussey submitted a response to the proposed removal on December 4, 2015, refuting

some of the allegations and raising issues of discrimination and retaliation. *See* AR 79-86. Mr. Bussey refuted that he hung up on the employee on October 5th but admitted that he refused to visit the employee's office and that the call became contentious. *See* AR 80. Mr. Bussey also admitted that he used foul language during the encounter with the van drivers and offered explanations for his behavior. *See* AR 80-81.

In his December 4, 2015 response, Mr. Bussey also urged DTRA to compare his acts with those of Mr. Collins, asserting that Mr. Collins' "unscrupulous and willful acts of mismanagement, waste, fraud, abuse of Tax payer's dollar[s] are far more critical than any acts confronting myself." AR 85. Mr. Bussey further stated in his response that he had "advised Mr. Collins not to execute actions (verbally, in writing, and copied excerpts) of DoD, JTR and Code of Federal Law." *Id.* Mr. Bussey alleged that Mr. Collins had misused credit cards, purchased unnecessary items, and engaged in wrongful accounting practices. *See* AR 85-86. Mr. Bussey set forth eight detailed incidents of Mr. Collins' purported "gross and willful intents." *Id.* Mr. Bussey stated that, after inquiring about the legality of using a certain fund for building upgrades, Mr. Collins told him he was treading in deep water without a paddle. AR 86. Mr. Bussey alleged that each of his efforts to address these issues resulted in Mr. Collins being hostile toward and harassing him. *Id.*

Calvin Conger, Chief of the Engineering & Facilities Division, issued his Notice of Decision on January 5, 2016, in which he removed Mr. Bussey from federal service. *See* AR 72-75. Mr. Conger stated that the decision was made after considering all the facts, including Mr. Bussey's written responses and arguments he set forth in his September 17, October 16, and December 4, 2015 memoranda. AR 72. Mr. Conger noted: "you alleged other acts of malfeasance on the part of Mr. Collins and others at DTRA. While I take these allegations seriously and will look into those allegations, I do not find them relevant to the misconduct that is alleged in the

6

proposal memorandum and the allegations do not mitigate your own misconduct." AR 72.

On January 18, 2016, Plaintiff filed an MSPB Appeal of his removal. AR 1. He alleged in his appeal that the "Agency violated Merit Systems Protection Board (Merit System Principles), Anti-Discrimination and Anti-Retaliation/Reprisal Laws, Regulations, Rules and Policies and Whistle Blower Protection Laws, Regulations Rules and Polices in effecting this removal." AR 4. The MSPB AJ ordered Appellant Bussey to submit a statement of facts and issues, including any and all defenses. *See* AR 40-42. He specifically ordered Mr. Bussey to identify, as to his claim of violation of the Whistleblower Protection Laws, (a) the date, substance and recipients of the protected disclosure, (b) whether the disclosure constitutes a violation of law, rule, regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial danger to the public; (c) whether the proposing and/or deciding official knew of the disclosure; and (d) how it was a contributing factor in the agency's decision. AR 42. After appellant failed to file a timely submission, AJ Brooks entered a subsequent order on February 17, 2016. *See* AR 193-94. AJ Brooks clarified that he expected "the appellant to identify any and all protected disclosures he is alleging to have contributed to the agency's action removing him; mere examples will not suffice. The appellant's response must be exhaustive; any disclosures not clearly identified in a responsive list in tonight's response will be deemed waived absent a motion to amend with good cause shown." AR 195.

Mr. Bussey filed his submission in response to the order. *See* AR 198-212. With respect to his Whistleblower Protection Act claims, Mr. Bussey set forth his August 15, 2015 Memorandum to DOD Inspector General. *See* AR 205-211. He asserted: "Following his submission of this 'whistleblower' memorandum, the acts of retaliation and reprisal detailed above took place, culminating in Appellant's removal." AR 210. His submission did not include allegations that he

7

was retaliated against because of his informal complaints to Mr. Collins or because of his complaints against Mr. Collins set forth in his December 4, 2015 response. *See* AR 207-11.

On February 24, 2016, AJ Brooks entered a Supplemental Notice of Information to Include in Prehearing Submissions in which he set forth his understanding of the claims and defenses. *See* AR 213-28. With respect to the retaliation claims, AJ Brooks stated: "I find he is also alleging retaliation for making a report to the Inspector General on August 15, 2015, and for testifying at the Board hearing…. **Those are the only affirmative defenses I am aware of and I will analyze them as claims of EEO discrimination and reprisal, reprisal for making a report to the Inspector General, and reprisal for testifying at a Board hearing.**" AR 214 (bold emphasis in original). He informed the parties that they must submit any "additions, corrections, or objections to this notice" by "February 26, 2016 or be deemed waived." AR 213 n.1.

Mr. Bussey submitted his Prehearing Submissions on February 26, 2016, and subsequently he submitted his exhibits in support. *See* AR 459-536. Regarding his whistleblower retaliation claims, Mr. Bussey asserted that Mr. Conger "was aware of his history of exposing fraud, waste and abuse at DTRA," AR 460, and that the issue is whether his removal "was based on retaliation and reprisal for his 'whistleblower' activity in exposing fraud, waste and abuse within DTRA," AR 461. In response to the question of the date, substance, and recipients of the protected disclosure, Mr. Bussey answered: "The substance and recipients of the protected disclosure are set forth in Exhibit 1, the 'Whistleblower Memorandum.' The date on which the Memorandum was submitted was 15 August 2015….The proposing and deciding officials both knew of Mr. Bussey's disclosure. Mr. Bussey's removal was proposed and effected after he made this disclosure." AR 480. After a hearing held on March 15 and 16, 2016, Mr. Bussey submitted his Closing Brief, in which he did not submit any additional protected disclosures on which his Whistleblower

allegations were based. *See* AR 697-714.

The MSPB AJ entered an Initial Decision on June 6, 2016, affirming the agency's removal action. *See* AR 715. He sustained the charge of conduct unbecoming a federal employee regarding the June 11, August 12, September 9, and October 5, 2015 incidents, providing extensive detail as to his findings and credibility determinations. *See* AR 718-27. He also found the Agency established the charge of abusive language toward coworkers stemming from the October 21, 2015 incident and explained why he found the three witnesses who supported the charge more credible than Mr. Bussey. *See* AR 728-32. Next, the MSPB AJ sustained the charge against Mr. Bussey of failure to comply with leave procedures on September 10, 2015 and determined that the Agency established the charge of lack of candor on September 9 and 14, 2015. AR 732-34.

The MSPB AJ also examined Mr. Bussey's affirmative defenses of EEO discrimination, EEO reprisal, and "reprisal covered by the Whistleblower Protection Enhancement Act (WPEA) (disclosing information to the Inspector General and testifying for an appellant who alleged whistleblower reprisal)." AR 735-36. Regarding Mr. Bussey's Whistleblower retaliation claims, AJ Brooks concluded:

> I find the appellant failed to establish a prima facie case that his removal was reprisal for that activity because he failed to establish that Collins, Conger, or anybody else involved in removing him had any knowledge of that Inspector General complaint. At hearing, Collins and Conger both denied having any such knowledge…. The only evidence the appellant offered somewhat to the contrary was a generalized statement that after he filed his Inspector General complaint, he experienced a "decrease in activities reported," which he explained involved "office supplies getting held back" and a return to old credit card processes…. However, I find the appellant's testimony about this matter was so vague and lacking in any conviction that I give it no weight. I find the appellant failed to establish a prima facie case of reprisal for his Inspector General complaint, and accordingly I do not reach the issue of whether the agency would have taken the same action in removing him even absent his Inspector General activity.

AR 740-41. After explaining his grounds for rejecting the affirmative defenses, AJ Brooks found

a nexus between the charges and the efficiency of the service and determined that the removal action was within tolerable limits of reasonableness. *See* AR 735-48. The Initial Decision became final on July 11, 2016. *See* Def.'s Mot. Summ. J. ¶ 60, ECF No. 28; Pl.'s Summ. J. Resp. ¶ 60, ECF No. 32.

## II. PROCEDURAL BACKGROUND IN FEDERAL COURT

"A federal employee may exhaust administrative remedies either by filing a complaint with the EEO [Equal Employment Opportunity] department of the employing agency or by proceeding to the MSPB." *Dossa v. Wynne*, 529 F.3d 911, 913 (10th Cir. 2008). When an appeal of a MSPB decision involves both discrimination and other claims, it is referred to as a "mixed case," because the alleged unlawful discrimination is either related to or stems from an employment action over which the MSPB has jurisdiction. *See Harms v. I.R.S.*, 321 F.3d 1001, 1005 (10th Cir. 2003) (citing 29 C.F.R. § 1614.302(a) & 5 C.F.R. § 1201.3); *Williams v. Rice*, 983 F.2d 177, 179 (10th Cir. 1993). The employee may seek *de novo* review of the MSPB's decision in federal district court as to his discrimination claims. *Rice*, 983 F.2d at 179 (citing 5 U.S.C. § 7703(c)). The non-discrimination claims, however, "are reviewed on the administrative record." *Id.* at 179-80.

Consistent with 5 U.S.C. § 7703(b)(2), Mr. Bussey timely filed this lawsuit on August 9, 2016. Mem. Op. and Order 2, ECF No. 37. In Counts I and II of his Complaint, Mr. Bussey alleged claims of race discrimination and retaliation for participating as a witness and for previous EEO filings in violation of Title VII. Compl. ¶¶ 25-32, ECF No. 1. In Count III, he asserted that he engaged in protected disclosure of fraud and waste to the Inspector General's Office, and he was subject to adverse employment actions in violation of the Whistleblower Protection Enhancement Act of 2012 ("WPEA"), Pub. L. No. 112-199, 126 Stat. 1465 (2012). *See id.* ¶¶ 33-38. Mr. Bussey alleged that in 2014 and 2015, he had numerous conversations with his supervisor, Mr. Collins,

about what Mr. Bussey believed were illegal procurement and fraud and waste in the purchase of items not necessary for the mission of DTRA by Mr. Collins, to include using two credit cards to split the costs of purchased goods so limits on purchasing were not exceeded which would require additional authorization. *See id.* ¶¶ 12-14. Mr. Bussey alleges that Mr. Collins told him in 2015 to stop complaining about items he was purchasing or there would be consequences and that he was in deep waters without a paddle. *Id.* ¶ 15. Mr. Bussey further alleged he made a Whistleblower complaint with the IG's office on August 15, 2015. *Id.* ¶ 16.

The Honorable M. Christina Armijo entered a Memorandum Opinion and Order granting summary judgment to Defendant on Plaintiff's Title VII discrimination and retaliation claims. *Compare* Mem. Op. and Order 32-33, ECF No. 37, *with* Compl., ECF No. 1. The Court denied Defendant's motion for summary judgment on Plaintiff's claim for retaliation in violation of the WPEA. *See* Mem. Op. and Order 2, 5-7, ECF No. 37. The Court concluded that Defendant had the obligation to file the AR, which it had not done, so the record was not sufficiently developed. *See id.* at 5-7. The Court further determined that Defendant had erroneously relied on the summary judgment standard, rather than the standard of review applicable to agency decisions under the Administrative Procedures Act, and ordered Defendant to file the AR. *See id.* The Court in its discretion retained jurisdiction over Plaintiff's WPEA claim. *Id.* at 32.

Following the decision, Defendant filed the AR and the parties submitted their administrative appeal briefs. Plaintiff argues that the MSPB's decision was not in accordance with the law of the WPEA, was arbitrary, and was not supported by substantial evidence. Pl.'s Br. 1, ECF No. 49. Plaintiff contends that the MSPB AJ applied the wrong standard on what constitutes a protected activity, did not review critical evidence, and relied on misleading evidence of the Agency's witnesses. *Id.* Defendant responds that substantial evidence exists to support Plaintiff's

termination of employment for conduct unbecoming a federal employee, abusive language towards coworkers, failure to comply with leave procedures, and lack of candor. Def.'s Br. 3, ECF No. 50. Defendant additionally argues that the MSPB AJ was not required to consider the affirmative defense based on complaints to Mr. Collins and Mr. Conger because Plaintiff's submission on appeal did not include those allegations. *Id.* at 12.

### III. STANDARD OF REVIEW

An appeal of an MSPB decision involves a narrow review. *Romero v. Department of the Army*, 708 F.2d 1561, 1563 (10th Cir. 1983). Non-discrimination claims which are appealed from the MSPB are reviewed on the administrative record under an "arbitrary and capricious standard" where the MSPB's decision need only have a rational basis in law. *Williams*, 983 F.2d at 181 (citing *Wilder v. Prokop*, 846 F.2d 613, 619 (10th Cir.1988)). As the Tenth Circuit holds:

> A MSPB decision must be upheld unless the reviewing court determines that it is:
>
> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (2) obtained without procedures required by law, rule, or regulation having been followed; or
>
> (3) unsupported by substantial evidence.
>
> 5 U.S.C. § 7703(c). The reviewing court "may not substitute its judgment for that of the MSPB." *Wilder v. Prokop*, 846 F.2d 613, 619 (10th Cir. 1988). "Under the arbitrary and capricious standard the MSPB's decision needs only to have a rational basis in law." *Id.* at 620.

*Id.* at 180. Substantial evidence supports the MSPB's decision if it is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brewer v. United States Postal Service*, 647 F.2d 1093, 1096 (Ct. Claims 1981) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1581 (10th Cir. 1994) ("'Substantial evidence' is more than a mere scintilla; it must be such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

IV. **LEGAL ANALYSIS**

The WPEA, 5 U.S.C. § 2302(b), provides:

Any employee who has the authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority . . .

> (8) take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee . . . because of –
>
>> (A) any disclosure of information by an employee . . . which the employee . . . reasonably believes evidences—
>>
>>> (i) any violation of any law, rule, or regulation, or
>>> (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety . . . .

5 U.S.C. § 2302(b)(8)(A). "To establish a prima facie case for whistleblowing under the WPA, Plaintiff must show by a preponderance of the evidence that (1) he made a protected disclosure, (2) he was subjected to an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action." *Wells v. Shalala*, 228 F.3d 1137, 1146-47 (10th Cir. 2000). The burden of showing a prima facie case is on the employee. *See Considine v. National Credit Union Admin.*, 366 F. App'x 157, 2010 WL 569325 (Fed. Cir. Feb. 16, 2010) (unpublished) (citing *Horton v. Dep't of Navy*, 66 F.3d 279, 282 (Fed. Cir. 1995)); *Hamilton v. Department of Veterans Affairs*, 115 M.S.P.R. 673, ¶ 25 (2011). If the appellant makes a prima facie showing, the burden shifts to the agency to show by clear and convincing evidence that it would have taken the same adverse employment action in the absence of any protected activity. *Hamilton*, 115 M.S.P.R. 673, ¶ 25.

Plaintiff asserts that, although the MSPB AJ determined that Plaintiff had not proven he was retaliated against for his IG complaint, the MSPB AJ failed to consider "the complaints

13

Plaintiff made to the deciding official, Mr. Conger, about fraud and waste by his supervisor, Mr. Collins." Pl.'s Br. 3, ECF No. 49. Plaintiff argues that protected activity can be a report to an employer about fraud and waste, *id.*, so the MSPB AJ "wrongly concluded that the proposing and deciding officials were not aware of Plaintiff's protected whistle blowing activities prior to his removal because the ALJ was only considering the report to the IG, not the reports Plaintiff made to the employer." *Id.* at 4. Plaintiff argues that the MSPB AJ's focus on IG reporting shows that he did not read or consider Plaintiff's response to the proposed notice of removal, in which Plaintiff set forth his detailed allegations of fraud and abuse against Mr. Collins. *See id.*

Contrary to Plaintiff's argument, Administrative Judge Brooks' focus on the IG complaint, rather than on reports Plaintiff made directly to his employer, was rational and based on the record before him. At no point during the MSPB appeal process did Mr. Bussey contend that his whistleblower retaliation claim was based also on his fraud and waste complaints to Mr. Collins and his raising those complaints to Mr. Conger. Instead, Plaintiff repeatedly stated in his MSPB submissions that his Whistleblower retaliation claim arose from his August 15, 2015 Memorandum to the DOD Inspector General.[1] When Administrative Judge Brooks stated his understanding of the nature of the retaliation claims before him and the protected actions – which did not include any other informal complaints or the December 4, 2015 response as constituting a separate report of fraud and abuse for which he suffered retaliation – Mr. Bussey did not submit any additions, corrections or objections to the record. Plaintiff thus waived consideration of other protected conduct in his administrative appeal. Accordingly, Administrative Judge Brooks' failure to consider Plaintiff's informal reports about fraud and waste or the December 4, 2015 response as

---

[1] The Court recognizes that Plaintiff also raised on the MSPB appeal that he was retaliated for prior EEO activity and for testifying at the Board hearing of a coworker. *See* AR 735-36. The Court is focused here on only the claim and arguments before it on the appeal briefs, not on the claims previously resolved in the Court's Memorandum Opinion and Order filed on April 5, 2018.

separate protected activity for which he was retaliated was rational, in accordance with substantive and procedural law, was not arbitrary and capricious, and was not an abuse of discretion.

The record also does not support Plaintiff's argument that the MSPB AJ did not read or consider Plaintiff's response to his removal. To the contrary, the initial decision contains numerous references to Mr. Bussey's response. *See* AR 717, 726-27, 730-31, 747-48. The MSPB AJ also mentioned in the initial decision his consideration of cross examination questions asked by appellant's counsel at the hearing about why Mr. Conger did not initiate inquiries into the allegations the appellant raised in his response. AR 748.

Plaintiff additionally argues that Mr. Conger gave misleading testimony when he responded only to specific questions concerning his knowledge at the time of the proposed suspensions and to questions regarding the IG report, essentially faulting him for not offering up testimony of whether he was aware that Plaintiff had made informal complaints of fraud and waste against his supervisor. Plaintiff notes that no one, including Administrative Judge Brooks asked about those informal complaints. However, in Mr. Conger's Notice of Decision on Proposed Removal, he in writing acknowledged that Mr. Bussey had "alleged other acts of malfeasance on the part of Mr. Collins and others at DTRA." AR 72. Mr. Conger's knowledge of Mr. Bussey's informal complaints against Mr. Collins was therefore in the record. Moreover, Plaintiff was represented by counsel at the hearing, who had the opportunity to and did cross examine Mr. Conger. *See* AR 666, AR 840-869, 876-82. Counsel specifically asked Mr. Conger about his earlier testimony that he had no indication of whistle blowing prior to Agency counsel having a discussion with him, and Mr. Conger answered by clarifying that he testified that he was unaware of the DOD IG investigation. AR 856. The record thus does not support Plaintiff's argument that Mr. Conger was offering misleading testimony or that the MSPB AJ was misled by Mr. Conger's testimony.

15

Plaintiff also asserts that the MSPB AJ wrongly concluded that Mr. Collins and Mr. Conger were not aware of Plaintiff's protected activity. AJ Brooks found that Plaintiff failed to establish that Mr. Collins and Mr. Conger were aware that Plaintiff had filed *an IG complaint*. That finding is supported by substantial evidence in the administrative record and is rationally based. *See* AR 795 (Transcript of Mr. Collins' testimony stating that he was not aware that Mr. Bussey had filed a complaint with the Inspector General in August 2015); AR 840 (Transcript of Mr. Conger's testimony that he was not aware that Mr. Bussey had made a prior complaint to the DOD IG when he issued his decision to terminate Mr. Bussey's employment). *See also* AR 550 (Declaration of Vincent J. Raffery, Jr., Associate General Counsel for DOD OIG, stating that the DCIS information report and Hotline records contain no information that DCIS agents or the defense hotline staff contacted DTRA or DTRA employees Paul Collins or Calvin Conger). The fact that Plaintiff made informal complaints to Mr. Collins -- and notified Mr. Conger of his charges of fraud and waste in his December 4, 2015 response -- does not establish that either of them knew he made a formal IG complaint, the latter of which was the protected activity on appeal. The MSPB AJ weighed the testimony of the witnesses at the hearing and he found that Mr. Bussey's explanation for why Mr. Bussey believed Mr. Collins and Mr. Conger had knowledge that he had filed an IG report prior to their removal decision was "so vague and lacking in any conviction that I give it no weight." AR 741. *See also* AR 1073-75 (Transcript of Mr. Bussey's testimony). Credibility determinations of the hearing court should not be second-guessed by the appellate court. *See United States v. Silvers*, 84 F.3d 1317, 1328 (10th Cir. 1996).

Plaintiff nonetheless argues that the MSPB AJ erred by failing to consider the timing of the adverse action within a month of his protected activity as evidence that his protected activity was a contributing factor in the agency's decision to fire him. Plaintiff contends that he reported

fraud and waste on December 4, 2015, and suffered an adverse action approximately one month later, on January 5, 2016, demonstrating a causal connection by temporal proximity. *See* Pl.'s Br. 6-7, ECF No. 49.

"An employee may demonstrate that a disclosure was a contributing factor in a covered personnel action through circumstantial evidence, such as the acting official's knowledge of the disclosure and the timing of the personnel action." *Hugenberg v. Department of Commerce*, 120 M.S.P.R. 381 ¶ 12 (2013). The closer in time between the protected activity and the adverse action, the more likely it will support a showing of causation. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). For example, the Tenth Circuit has concluded that a one and one-half month period between protected activity and adverse action may, by itself, establish causation, but a three-month period alone is insufficient. *See id.* (comparing "*Ramirez v. Oklahoma Dept. of Mental Health*, 41 F.3d 584, 596 (10th Cir.1994) (one and one-half month period between protected activity and adverse action may, by itself, establish causation) *with Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir.1997) (three-month period, standing alone, is insufficient to establish causation)").

Plaintiff argues that the timing alone establishes causation, relying on Plaintiff's response submitted to Mr. Conger on December 4, 2015, and his termination on January 5, 2016. Once again, Plaintiff focuses on a protected conduct that was not before the administrative judge on appeal. Plaintiff limited the protected conduct supporting his whistleblower claim to his submission of the IG report, which Plaintiff made on August 15, 2015, approximately three months before he received the notice of proposed removal and approximately four-and-one-half months before his firing. Because the adverse action is not "very closely" connected in time with the protected activity, Plaintiff "must rely on additional evidence beyond temporal proximity to

establish causation." *Id.* The MSPB AJ's failure to find that the timing of the adverse action alone established causation was not contrary to law. Moreover, given the record before him, his conclusion that Plaintiff did not establish a prima facie case of Whistleblower retaliation because he did not show causation was rational, supported by the record, not arbitrary and capricious, and not an abuse of discretion.

**IT IS THEREFORE ORDERED** that the decision of the MSPB is **AFFIRMED**. Plaintiff's claim in Count III is **DISMISSED**. A separate judgment pursuant to Rule 58 dismissing this action shall enter concurrently herewith.

_____
**UNITED STATES DISTRICT JUDGE**